2021 IL App (1st) 181175-U

No. 1-18-1175

Order filed May 27, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | Nos. 08 CR 5496 |
| | ) | 08 CR 5497 |
| | ) | |
| ARTURO TORRES, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions for aggravated criminal sexual assault are affirmed where the evidence was sufficient to establish the charged acts occurred and the actual dates of the acts were not an essential element of the crime. The matter is remanded for resentencing because the trial court mistakenly believed consecutive sentences were required.

¶ 2    Following a bench trial, defendant Arturo Torres was found guilty of seven counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b) (West 1994)) and sentenced to seven

consecutive terms of seven years' imprisonment.[1] He appeals, arguing that the evidence was insufficient respecting two of those counts because the State did not establish that the alleged acts occurred in the timeframe listed in the indictment. Defendant further argues that the matter should be remanded for resentencing because the court erroneously believed consecutive sentences were statutorily required. For the reasons below, we affirm the findings of guilt, vacate defendant's sentences, and remand for resentencing.

¶ 3    Defendant was charged by indictment with 43 counts regarding the sexual abuse of A.T., a minor. The charges included counts XI and XIII for aggravated criminal sexual assault, which alleged, respectively, that at some point between January 1, 1993, and October 16, 1994, defendant forced A.T. to perform oral sex on him and that defendant performed oral sex on A.T. The matter proceeded to a bench trial, which occurred simultaneously with defendant's bench trial for sexual assault charges against a second victim, J.G.[2] Prior to trial, the court partially granted the State's motion to introduce evidence of prior crimes. As to the case involving A.T., the court permitted testimony from another alleged victim of defendant, J.M., along with evidence regarding J.G.

¶ 4    At trial, Claudia G. testified that she is defendant's niece and J.G.'s mother. During her childhood, defendant lived in Claudia's home on South St. Louis Avenue in Chicago. Claudia's family lived on the first floor, while A.T., Claudia's cousin, lived with his family on the second floor.

---

[1] Defendant was also sentenced to 20 years' imprisonment in case No. 08 CR 5497, respecting the victim J.G., to be served consecutively to his sentences in case No. 08 CR 5496, involving the victim A.T. Although defendant's notice of appeal also lists case No. 08 CR 5497, his brief on appeal does not raise any issues respecting that case.

[2] J.G. testified at trial that his first name is spelled with a "J," although the State's brief and the charging documents spell it with a "G."

¶ 5    In 1998, J.G. spent daycare at his great-grandmother Virginia's home on 81st Street in Chicago during Claudia's workday. By that time, defendant had left Claudia's home and lived with Virginia. In the summer of 1998, J.G. told Claudia that his "butt" hurt because defendant "grabbed" it. As a result, Claudia stopped taking J.G. to Virginia's home for daycare.

¶ 6    Years later, in August 2007, Claudia and J.G. ran into A.T. at a Walmart, and the group then visited A.T.'s sister. During that visit, Claudia obtained A.T.'s phone number. Later, Claudia provided defendant with A.T.'s phone number at defendant's request. The day after she gave defendant A.T.'s phone number, Claudia received an angry phone call from Dina R., A.T.'s mother. As a result, Claudia spoke to other family members, then to J.G., who reacted angrily. Shortly thereafter, Chicago police detective Jose Castaneda contacted Claudia and J.G., and later interviewed J.G.

¶ 7    J.G. testified that he was born on April 18, 1993. Defendant is his great-uncle. In 1998, when J.G. was five years old, defendant sexually abused him at Virginia's home. The first time it occurred, J.G. went to defendant's apartment to play with toys. Defendant pulled J.G. to the ground, held him down, and forcefully inserted his penis into J.G.'s anus. When defendant stopped, he told J.G. not to tell anyone because it would "ruin the family." Defendant also sexually assaulted J.G. the next day. Eventually, J.G. told Claudia what was happening. She stopped taking him to Virginia's home, and instead took him to his grandmother's home for daycare, though J.G. still came into contact with defendant on occasion.

¶ 8    Defendant last sexually assaulted J.G. in 2000 or 2001, when J.G. was six or seven years old. In August 2007, Claudia asked J.G. about the abuse, but he "pushed her away." In October 2007, J.G. spoke to Chicago police detectives, including Detective Castaneda.

¶ 9    On cross-examination, J.G. testified that he went to Virginia's home for daycare every weekday for three or four consecutive summers. On the first day that defendant assaulted J.G., he assaulted him again later that day. When he told Claudia what was happening, he did not admit that defendant was raping him, only that defendant was "touching" him. He never spoke to A.T. about defendant's conduct. On redirect, J.G. clarified that defendant abused J.G. every day, three times a day, at Virginia's home.

¶ 10    A.T. testified that he was on born on October 17, 1983. Starting when A.T. was approximately seven years old, defendant, his uncle, sexually assaulted A.T. on multiple occasions in the attic of the home on St. Louis. During the first incident, defendant touched A.T.'s penis, forced A.T. to perform oral sex, digitally penetrated A.T.'s anus, and inserted his penis into A.T.'s anus. On another occasion, in the basement of defendant's sister's home, defendant inserted his penis into A.T.'s anus, forced A.T. to perform oral sex, and performed oral sex on A.T. Defendant inserted his penis into A.T.'s anus on approximately 10 occasions from 1989 to December 1992. During that period, defendant also forced A.T. to perform oral sex on him approximately 10 occasions. Additionally, defendant performed oral sex on A.T. 5 to 10 times in that timeframe.

¶ 11    A.T. testified regarding another incident between January 1993 and October 1994, during which defendant touched A.T. and inserted his penis into A.T.'s anus. After that incident, A.T. did not come into contact with defendant again. He did not tell his mother about what defendant did until he was a teenager.

¶ 12    Defendant telephoned A.T. in August 2007. During the call, defendant asked A.T. when he was "going to come visit him." A.T. felt "shocked." He told his mother, and later, on September

5, 2007, went with her to file a police report against defendant. Later, A.T. met with Detective Castaneda.

¶ 13    J.M. testified that defendant, his uncle, sexually assaulted him on multiple occasions while J.M. was a child. The first assaults occurred when J.M. visited family in Mexico. Defendant assaulted J.M. "every day" during these trips. These assaults continued when defendant moved to Chicago in the 1980s, when J.M. was 10 or 11 years old, and continued until J.M. was 15 years old. In September 2007, J.M. spoke to Claudia, his sister, and filed a police report regarding defendant's assaults.

¶ 14    On cross-examination, J.M. testified that he was three to five years old when defendant first assaulted him. He did not know defendant's age at that time.

¶ 15    Dina, A.T.'s mother, testified that defendant is her former brother-in-law. Around 1993, A.T.'s father took A.T. to visit the St. Louis home, where defendant lived "once or twice a month." A.T. was upset prior to these visits and told Dina he did not want to go. Years later, in late August 2007, A.T. told her that defendant had called him. Dina was angry and had "choice words" with both defendant and Claudia over the phone. On September 5, 2007, Dina and A.T. filed a police report against defendant.

¶ 16    Detective Castaneda testified that he spoke to J.M., A.T., and J.G. regarding the investigation of defendant on separate dates in September and October 2007. Dina accompanied A.T., who could not provide specific times for the incidents.

¶ 17    Detective Castaneda arrested defendant on November 9, 2007. During Castaneda's interview with defendant, defendant claimed that he had been "physically and sexually abused as a child." Defendant also admitted that he had "sexual contact" with J.M. in both Mexico and

Chicago. Specifically, defendant told Castaneda that he had "anal sex, oral sex, and *** had masturbated" with J.M., and performed the acts because he was "angry" with J.M. for being a "happy child."

¶ 18    On cross-examination, Castaneda confirmed that he interviewed defendant again in February 2008. Defendant denied any sexual contact with J.G. or A.T.

¶ 19    Defendant testified that he was 45 years old on the date of his testimony, October 15, 2010. He denied that he sexually abused J.G. or A.T. Defendant acknowledged sexual contact with J.M., but denied using force. These incidents started when J.M. was 8 years old and defendant was 14 years old, continued until J.M. was 15 years old, and occurred in both Mexico and Chicago. Defendant also acknowledged that he called A.T. in 2007.

¶ 20    The State recalled Detective Castaneda in rebuttal, who testified that defendant admitted that as part of the sexual contact he had with J.M., defendant performed oral sex on J.M., and also inserted his penis into J.M.'s mouth.

¶ 21    Following closing arguments, the court found defendant guilty of counts I through XIV for aggravated criminal sexual assault and XXXVI and XXXVII for aggravated criminal sexual abuse, and acquitted him of the remaining counts. In so ruling, the court stated that it found the State's witnesses credible, and believed J.G. and A.T. "without qualification." Because J.G. and A.T. were minors when the incidents occurred, the court "would not anticipate that either *** would be able to testify with specificity with regards to particular dates, particular times of year, [or] even a particular year with respect to when something happened."

¶ 22    On January 7, 2011, the court denied defendant's motion for a new trial. The matter moved to sentencing, where defendant elected to be sentenced under the law as it existed at the time of

his offenses. The court imposed a total of 49 years' imprisonment, comprised of consecutive seven-year terms on seven counts—counts I, III, V, VII, IX, XI, and XIII.[3] In so ruling, the court stated its belief that the sentences were "mandatory consecutive," but also questioned both parties whether four consecutive sentences were appropriate because of the distinct time periods reflected in the charges. Defense counsel asked that defendant be sentenced only on counts I, III, V, and VII, but the court ultimately imposed sentence on all seven counts.

¶ 23    Defendant did not file a motion to reconsider sentence. On January 20, 2012, the circuit court denied defendant's late notice of appeal.

¶ 24    On January 25, 2012, defendant filed a *pro se* petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)), alleging ineffective assistance of counsel. On July 15, 2015, through counsel, defendant filed a supplemental petition, which alleged that trial counsel provided ineffective assistance by not filing a timely notice of appeal despite defendant's wishes to do so. The State moved to dismiss the petition. On May 2, 2018, the court granted defendant's petition and permitted him leave to file this direct appeal. See *People v. Ross*, 229 Ill. 2d 255, 271 (2008) ("We hold that when a postconviction petitioner demonstrates that defense counsel was ineffective for failing to file a notice of appeal, the trial court may allow the petitioner leave to file a late notice of appeal.").

¶ 25    On appeal, defendant first argues that the evidence was insufficient regarding counts XI and XIII for aggravated criminal sexual assault because the State did not establish that the alleged conduct occurred between January 1, 1993, and October 16, 1994, as alleged in the indictment.

---

[3] The court merged count II into count I, count IV into count III, count VI into V, count VIII into count VII, count X into count IX, count XII into count XI, and count XIV into count XIII, and also merged counts XXXVI and XXXVII "into the remaining counts."

¶ 26    When reviewing the sufficiency of the evidence, the reviewing court construes the evidence in the light most favorable to the State and determines whether any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Harris*, 2018 IL 121932, ¶ 26. The reviewing court will not substitute its judgment for that of the factfinder regarding the weight of the evidence or the credibility of the witnesses. *People v. Hardman*, 2017 IL 121453, ¶ 37. The lower court's ruling should not be reversed unless the evidence is so improbable or unsatisfactory that it creates reasonable doubt of the defendant's guilt. *Harris*, 2018 IL 121932, ¶ 26.

¶ 27    The State here charged defendant with numerous counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b) (West 1994)) across three time periods. In criminal sexual assault matters involving minors, the alleged dates of occurrence are not an essential element of the crime, and the State need not prove particular dates to sustain a verdict. *People v. Guerrero*, 356 Ill. App. 3d 22, 27 (2005).

¶ 28    Defendant was convicted of three counts of wrongful conduct between October 17, 1989, and December 31, 1992: count I for defendant inserting his penis into A.T.'s anus, count III for forcing A.T. to perform oral sex, and count V for defendant performing oral sex on A.T. Next, defendant was convicted of count VII for digital penetration into A.T.'s anus between October 17, 1989, and October 16, 1991. Finally, defendant was convicted on three counts of wrongful conduct between January 1, 1993, and October 16, 1994: count IX for inserting his penis into A.T.'s anus, count XI for forcing A.T. to perform oral sex, and count XIII for defendant performing oral sex on A.T.

¶ 29    Defendant argues that the evidence did not establish that any charged act besides anal penetration occurred specifically between January 1, 1993, and October 16, 1994, and thus the

evidence on counts XI and XIII fails. The record shows that the only testimony regarding a sexual assault of A.T. by defendant between the dates of January 1, 1993, and October 16, 1994, described anal penetration. A.T.'s testimony did establish, however, that between 1989 and December 1992, defendant forced A.T. to perform oral sex approximately 10 times, and performed oral sex on A.T. 5 to 10 times.

¶ 30    Based on this record, we find that the State's evidence was sufficient to sustain the guilty findings for counts XI and XIII. The law is clear on this issue—the alleged dates of occurrence are not essential elements in sexual assault cases involving minor victims, and the State does not have to prove the particular dates on which alleged acts occurred. *Guerrero*, 256 Ill. App. 3d at 27 ("The date of the offense is not an essential factor in child sex offense cases."); see also *People v. Burton*, 201 Ill. App. 3d 116, 123 (1990) ("[T]he precise date the offense was allegedly committed is not an element of the offense."). Additionally, as this court also explained in *Guerrero*, provided the alleged sexual assault "occurred within the statute of limitations and prior to the return of the charging instrument, the State need only provide the defendant with the best information it has to when the offenses occurred." *Guerrero*, 256 Ill. App. 3d at 27.

¶ 31    Given the foregoing, the evidence at trial did specifically establish that specific instances of defendant forcing A.T. to perform oral sex or defendant performing oral sex on A.T. occurred between January 1, 1993, and October 16, 1994. The indictment informed defendant that he was charged with multiple counts of sexually assaulting A.T. between 1989 and 1994 in the manners described above, and this was all the law requires. See *People v. Albarran*, 2018 IL App (1st) 151508, ¶¶ 22-23. Additionally, there is no risk that defendant was convicted on multiple counts for the same conduct; A.T.'s testimony was clear that defendant orally penetrated him on

approximately 10 occasions from 1989 and 1992, and performed oral sex on A.T. on 5 to 10 occasions in the same timeframe. This testimony was more than sufficient for a rational factfinder to conclude therefrom that defendant was guilty of two separate counts of forcing A.T. to perform oral sex, establishing counts III and XI, and two separate counts based on defendant performing oral sex on A.T., establishing both counts V and XIII, even where the evidence did not establish that any of those specific acts occurred between January 1, 1993, and October 16, 1994. See *Guerrero*, 256 Ill. App. 3d at 27; see also *Burton*, 201 Ill. App. 3d at 123. Consequently, defendant's challenge to the sufficiency of the evidence fails.

¶ 32    Defendant next argues that the trial court erred by imposing consecutive sentences on each of the seven counts on which it entered verdicts under the mistaken belief that the statute required consecutive sentences on all counts. Defendant acknowledges that he forfeited this issue by not filing a motion to reconsider sentence, but argues we should exercise a plain error review. The State argues that defendant forfeited this issue, but acknowledges remand is appropriate on counts VII, IX, XI, and XIII because the trial court erred by sentencing under the misconception that the statute mandated consecutive sentences for each count.

¶ 33    Where a party has not appropriately preserved a sentencing error through a timely objection and a motion to reconsider sentence, the reviewing court may still consider the error on a plain error review where a clear or obvious error occurred, and "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). We must first determine whether a clear or obvious error occurred. *Hillier*, 237 Ill. 2d at 545.

¶ 34    A lower court's sentencing decisions are typically granted great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A claim that the lower court misapplied the applicable sentencing statute is a matter of statutory interpretation, which we review *de novo*. *People v. Holley*, 2019 IL App (1st) 161326, ¶ 22 (citing *People v. Taylor*, 221 Ill. 2d 157, 162 (2006)). Where a defendant is improperly sentenced to consecutive terms, his fundamental rights are implicated. *People v. Williams*, 335 Ill. App. 3d 596, 598 (2002); see also *People v. Hicks*, 181 Ill. 2d 541, 545 (1998) ("[t]he imposition of an unauthorized sentence" may affect the defendant's substantial rights).

¶ 35    Here, defendant chose to be sentenced under the law at the time of the offenses, as was his right. *People v. Hollins*, 51 Ill. 2d 68, 71 (1972). At the relevant time here, the sentencing statute mandated consecutive sentences for convictions if they involved acts constituting a "single course of conduct." See *People v. Bole*, 155 Ill. 2d 188, 198 (1993) (discussing 730 ILCS 5/5-8-4(a) (West 1994)). Where multiple convictions arose from separate courses of conduct, the statute provided that the sentencing court could impose consecutive sentences at its discretion if it found that consecutive sentences were necessary to protect the public from the defendant. 730 ILCS 5/5-8-4(b) (West 1994). Where a victim testifies that a defendant sexually assaulted him on multiple occasions, each such occasion constitutes a separate course of conduct. *Bole*, 155 Ill. 2d at 193-94.

¶ 36    Under *Bole*, we find that the trial court here committed a clear and obvious error by imposing seven separate consecutive sentences under the misapprehension that the statute so required. The court described all counts as "mandatory consecutive," but the evidence was clear that the acts for which defendant was convicted were not all part of a single course of conduct as

defined in *Bole*. Thus, the court erred by not determining which convictions were included in which courses of conduct in imposing sentences. Additionally, while the trial court could have exercised its discretion to impose consecutive sentences regardless of the number of courses of conduct, it could not do so without finding that the consecutive sentences were necessary to protect the public, which it failed to do.

¶ 37    We further find that the error denied defendant a fair sentencing hearing, and thus constitutes second prong plain error. As explained above, the trial court here sentenced defendant to consecutive terms without making the statutorily required findings, which implicates his fundamental rights. See *Williams*, 335 Ill. App. 3d at 598; see also *Hicks*, 181 Ill. 2d at 545. Accordingly, the court committed plain error, and a remand for resentencing is appropriate.

¶ 38    For the foregoing reasons, defendant's convictions are affirmed, defendant's sentences are vacated, and the matter is remanded for resentencing. At resentencing, the court should determine which counts belong to which courses of conduct and sentence accordingly, or, if the court believes in its discretion that consecutive sentences on some or all counts are necessary to protect the public, it should make this finding explicit on the record.

¶ 39    Affirmed in part; vacated in part; remanded with directions.