2022 IL App (1st) 220919-U

No. 1-22-0919

Order filed January 4, 2023

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 16524 01 |
| | ) | |
| DARIUS MOORE, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE DEBRA B. WALKER delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*: We vacate the trial court's judgment granting defendant's petition at the second stage of postconviction proceedings and remand the matter for a third-stage evidentiary hearing.

¶ 2     Plaintiff, the People of the State of Illinois, appeal from the trial court's decision to grant defendant Darius Moore's petition at the second stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), and allow defendant to file a late notice

of appeal. The court found that defendant had made a substantial showing that his counsel performed deficiently when counsel failed to file a notice of appeal after defendant was convicted and sentenced. The State contends that counsel had no duty to consult with defendant about an appeal where the trial court's admonishment regarding defendant's right to appeal was "clear and informative," and counsel had no reason to believe that defendant was interested in filing an appeal. Alternatively, if defendant had made a substantial showing of ineffective assistance of counsel, the State contends that the trial court erred in granting relief without conducting a third-stage evidentiary hearing. For the following reasons, we vacate the trial court's judgment and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4      The State charged defendant with one count of being an armed habitual criminal, four counts of unlawful use or possession of a weapon by a felon, and four counts of aggravated unlawful use of a weapon. Defendant's bench trial was held on December 6, 2018. Three Chicago police officers, Joseph Lisciandrello, Thomas Bishop, and Alain Aporongao, testified at the trial.

¶ 5      On the evening of October 24, 2017, the officers were on patrol in an unmarked police vehicle. Each wore a protective vest bearing Chicago Police identification. As Officer Aporongao drove on the 1100 block of North Springfield Avenue, the other officers observed defendant walking south on the east side of the street. The area was illuminated by streetlights. When defendant saw them, he turned around and walked in the opposite direction. Defendant then attempted to conceal himself behind a parked vehicle.

¶ 6      Finding defendant's behavior suspicious, Officer Lisciandrello exited the vehicle to conduct a field interview. Defendant fled south on Springfield and Officer Lisciandrello ran after him. From 30 to 40 feet away, the officer observed defendant with "a black handgun in his right

hand." Officer Lisciandrello shouted "gun" to alert his partners. Officer Aporongao stopped the vehicle at the intersection of Springfield and Thomas, where he and Officer Bishop joined in chasing defendant.

¶ 7      On the 1000 block of North Springfield, defendant attempted to jump a fence and fell. After successfully jumping that fence, he ran through the yard and jumped over another fence as Officer Bishop chased him. Officer Lisciandrello continued to run south on Springfield. When defendant ran through a gangway onto Springfield, Officer Lisciandrello was waiting for him and placed him into custody.

¶ 8      Officer Bishop retraced defendant's steps to the backyard of 1057 North Springfield where he recovered a black semiautomatic firearm near the south fence line. The weapon appeared to be the same one Officer Lisciandrello observed as he chased defendant. Although the magazine was missing, the weapon contained one live round. Officer Aporongao recovered the missing magazine, which also contained live ammunition, in the area where defendant fell as he attempted to jump over the first fence. Neither Officer Bishop nor Officer Aporongao observed defendant with a firearm during the chase.

¶ 9      Defendant was transported to the police station where he was given *Miranda* warnings. Defendant told officers that he had the firearm for protection "because the block was into it." He obtained the weapon from a "person named Ant." Defendant's statement was not recorded.

¶ 10      After the officers testified, the State moved to include, as evidence, certified copies of defendant's prior convictions for unlawful use of a weapon by a felon and armed violence. Defendant rested without testifying or presenting evidence.

¶ 11      The trial court found "the officers' testimony credible, corroborated, [and] consistent," and convicted defendant of one count of being an armed habitual criminal (AHC) and two counts of

unauthorized use of a weapon by a felon (UUWF). Defendant filed a motion for a new trial and on January 7, 2019, he filed an amended motion. In the amended motion, defendant alleged that the evidence was insufficient to prove his guilt beyond a reasonable doubt where only one officer observed defendant with a firearm and that officer did not see defendant discard the firearm. The trial court denied defendant's motion for a new trial.

¶ 12    On January 17, 2019, the trial court held a sentencing hearing. At the hearing, defense counsel argued that because defendant's convictions involved nonviolent offenses, and his only prior violent offense occurred when he was 19 or 20 years old, the court should impose a lesser sentence. Defendant also addressed the court, offered his apology, and stated that he was young when he was convicted of the prior offenses. Now, he is "grown" with a job and an eight-month-old baby.

¶ 13    The trial court noted that defendant received his GED while imprisoned and he "had a job at a manufacturing plant." However, defendant also had prior felony convictions and was found with a firearm. Considering the facts of the case, the court did not believe the minimum sentence was appropriate. It did find, however, that "close to the minimum is appropriate" and sentenced defendant to 8 years' imprisonment.

¶ 14    The trial court then admonished defendant concerning his right to appeal:

"Mr. Moore, even though I sentenced you, you do have the right to appeal the sentence. You already have the right to appeal the trial because your lawyer has already filed for a motion for a new trial. You have 30 days from today to file an appeal and whether or not you'd like to appeal your verdict. But as to the sentence, you need to file a motion for a new sentencing hearing within 30 days. If that motion is denied, then you would have the

30 days from then to appeal. If it's granted, then you would get a new sentencing hear[ing.]"

When the court asked defendant whether he understood his appeal rights, defendant answered, "Yes, your Honor."

¶ 15    On October 28, 2020, defendant filed, through counsel, a petition for postconviction relief pursuant to the Act and section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)). In the petition, defendant claimed that his trial counsel was ineffective because counsel failed to file a notice of appeal and a motion to reconsider sentence, thereby preventing defendant from exercising his right to appeal his conviction and sentence. Defendant "wished to pursue all of his appellate rights to challenge his conviction and sentence," and "believed that trial counsel [had] filed a motion to reconsider sentence and notice of appeal on Defendant's behalf." However, when defendant's family inquired about the progress of the appeal, they discovered that no notice of appeal or motion to reconsider sentence had been filed. Defendant requested that the trial court vacate his sentence and allow him to file a motion to reconsider sentence as well as "a Notice of Appeal nunc pro tunc to January 7, 2019."

¶ 16    The trial court advanced defendant's petition to the second stage and on October 20, 2021, the State filed a motion to dismiss the petition. The State argued, *inter alia*, that defendant's petition was defective where it was not verified by an affidavit, and that defendant failed to make a substantial showing of ineffective assistance of counsel because his allegations were unsupported by affidavits, records, or other evidence as required by the Act.

¶ 17    On February 9, 2022, the court held a hearing on defendant's petition.[1] At the hearing, defendant's counsel requested leave to file defendant's affidavit. Due to the pandemic and counsel's inability "to bring a notary to the Illinois Department of Corrections," counsel asked the court to "swear" defendant regarding the facts in the affidavit. Although the State objected, the court allowed the affidavit based on defense counsel's difficulty having contact with defendant, and because the affidavit "basically restates what's in the motion to dismiss." Defendant signed and swore as to the contents of his affidavit.

¶ 18    The affidavit stated that after defendant's trial, counsel "never discussed" defendant's right to appeal or his right to file a motion to reconsider his sentence. Defendant, however, "wished" to appeal his case and challenge his sentence, and he incorrectly believed that a notice of appeal had been filed.

¶ 19    On March 4, 2022, the court granted defendant's petition and allowed him to file a notice of appeal *nunc pro tunc*. The court reasoned that the "higher courts" viewed the issue as one of "fundamental fairness regarding a constitutional right which is a right to appeal."

¶ 20    The State filed a motion to reconsider arguing, in relevant part, that the trial court could not grant relief under the Act at the second stage of postconviction proceedings. On April 12, 2022, the trial court held a hearing on the motion. The court asked if the State would "call somebody" at a third-stage evidentiary hearing. The assistant state's attorney responded that he would call defendant's trial counsel and would "probably file motions for discovery and answers to discovery."

___

[1] At the hearing, defendant acknowledged that he was not entitled to relief under section 2-1401 of the Code.

¶ 21    The trial court denied the motion, however, because it was "satisfied" that defendant had a right to appeal, and it did not "see that there [are] any issues here that an evidentiary hearing would support or be dispositive of." The court entered an order memorializing its oral ruling and the State filed a timely notice of appeal on May 5, 2022.

¶ 22                                    II. ANALYSIS

¶ 23    We first address the State's argument that the trial court failed to follow proper procedure under the Act. The State argues that by granting defendant's petition at the second stage of proceedings, without conducting an evidentiary hearing, the trial court failed to comply with the provisions of the Act. We review the trial court's determination at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 24    The Act is a "legislative creation" that allows an incarcerated defendant to assert a substantial violation of his constitutional rights at trial. *People v. Bailey*, 2017 IL 121450, ¶ 17. A postconviction proceeding is not a substitute for a direct appeal but instead "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22. Therefore, issues raised and decided on direct appeal or in a prior proceeding are barred as *res judicata*, and issues that could have been raised, but were not, are forfeited. *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 21. The "Act delineates the process for litigating all postconviction petitions." *Bailey*, 2017 IL 121450, ¶ 17.

¶ 25    Proceedings under the Act are divided into three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the trial court may dismiss a postconviction petition that is

"frivolous or *** patently without merit." 725 ILCS 5/122–2.1(a)(2) (West 2020). A petition is frivolous or patently without merit if it has no arguable basis either in law or fact. *People v. Hodges*, 234 Ill.2d 1, 11 (2009). If the trial court does not dismiss the petition, it advances to the second stage where the court may appoint counsel to represent the defendant. 725 ILCS 5/122-2.1(b) (West 2020); *Bailey*, 2017 IL 121450, ¶ 18.

¶ 26    At the second stage, the defendant must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. Such a showing is made when the petition's well-pled allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Id.* ¶ 35. The trial court does not engage in fact-finding or credibility determinations at this stage; rather, all well-pleaded facts not positively rebutted by the original trial record are taken as true. *Id.* Also, the State may file a motion to dismiss or answer the petition. 725 ILCS 5/122–5 (West 2020).

¶ 27    If the petition fails to make a substantial showing of a constitutional violation, it is dismissed. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). "If not dismissed, however, the petition advances to the third stage, where the circuit court conducts an evidentiary hearing before deciding whether to grant relief." *Bailey*, 2017 IL 121450, ¶ 18. At the third stage, the court functions as the factfinder by determining witness credibility and resolving conflicts in the evidence. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 28    The second stage of postconviction proceedings tests only the legal sufficiency of the petition. See *Id.* ¶ 35. "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage *** is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven at an evidentiary hearing*, would entitle [defendant] to relief." (Emphasis added.) *Id.* This inquiry does not require the trial court to

make findings of fact or assess the parties' credibility. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). A motion to dismiss filed at the second stage "raises the sole issue of whether the petition being attacked is proper as a matter of law." *Id.*

¶ 29 Accordingly, where the petition and trial record present questions of fact or credibility concerns, granting postconviction relief at the second stage without a third-stage evidentiary hearing is improper. See *People v. Wheeler*, 392 Ill. App. 3d 303, 310-11 (2009) (finding the trial court's grant of postconviction relief at the second stage without an evidentiary hearing "premature," because the State's motion to dismiss raised the issue of the defendant's credibility); *People v. Cleveland*, 2012 IL App (1st) 101631, ¶¶ 52-53 (refusing to grant the defendant's request for relief at the second stage of proceedings without an evidentiary hearing, where fact questions existed regarding his conflict of interest claim).

¶ 30 Here, defendant alleged in his petition and affidavit that "he wished to pursue all of his appellate rights" and his trial counsel "never discussed" his right to appeal with him. The trial court granted his petition at the second stage based on these statements.

¶ 31 The third stage, however, is where the trial court generally determines whether the petition's allegations entitle him to relief. *Bailey*, 2017 IL 121450, ¶ 18. Although defendant's well-pled allegations are taken as true at the second stage of postconviction proceedings, defendant "no longer enjoys" such a presumption at the third stage. *People v. Gacho*, 2016 IL App (1st) 133492, ¶ 13. At a third-stage evidentiary hearing, the State is permitted to challenge the defendant's allegations and present its own evidence. *Cleveland*, 2012 IL App (1st) 101631, ¶ 37. The State confirmed that if the petition advanced to the third stage, it would call defendant's trial counsel as a witness. Given the opportunity to testify, trial counsel may contradict defendant's allegations. "Assessments of credibility are better suited to a third-stage evidentiary hearing."

*Wheeler*, 392 Ill. App. 3d at 310. Like *Wheeler*, we find that the trial court's grant of defendant's petition at the second stage was premature.

¶ 32 Defendant contends that a third-stage hearing is unnecessary because his ineffective assistance claim is based on counsel's duty to consult with defendant. Defendant argues that this claim involves "an objective test" to determine whether "a rational defendant would want to appeal." As such, the trial court had no credibility or factual issues to resolve and an evidentiary hearing "would only waste judicial resources." Defendant cites *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), as support. However, we are not persuaded by defendant's argument.

¶ 33 In *Flores-Ortega*, the United States Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either" 1) that a rational defendant would want to appeal, or 2) that "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. This determination required courts to consider "all the information counsel knew or should have known." *Id.*

¶ 34 Even if a defendant sufficiently established that counsel had a constitutional duty to consult about an appeal, he or she must also show that counsel breached that duty to merit relief on an ineffective assistance of counsel claim. *Id.* at 487. In *Flores-Ortega*, evidence showed that the defendant believed, after a conversation with his counsel, that his counsel would be filing an appeal. *Id.* at 474-75. Counsel, however, had no recollection of that conversation with the defendant. *Id.* at 475. The Court could not determine whether counsel breached her duty to consult without resolving whether counsel advised the defendant "about the advantages and disadvantages of taking an appeal and made a reasonable effort to discover his wishes." *Id.* at 487. It therefore vacated the Court of Appeals' grant of relief to defendant and remanded the case "for further proceedings consistent with" its opinion. *Id.*

¶ 35    Similarly, the record in this case does not indicate whether counsel breached his duty. There is no statement from counsel regarding whether he advised defendant about the advantages and disadvantages of filing an appeal, or that he made a reasonable effort to discover defendant's wishes. See *Id.* We have only defendant's recollection of what occurred after his sentencing, which trial counsel may contradict if given the opportunity to testify. *Flores-Ortega* instructs that in this circumstance, an evidentiary hearing is required. *Id. Flores-Ortega* does not support defendant's argument here.

¶ 36    Defendant also cites *People v. Gutierrez*, 376 Ill. App. 3d 182 (2007), *People v. Torres*, 2021 IL App (1st) 181175-U, *People v. Judeh*, 2017 IL App (1st) 153528-U, and *People v. Smith*, 2018 IL App (1st) 170008-U, as cases where the lower court granted post-conviction relief without an evidentiary hearing. *Judeh* and *Smith*, however, are unpublished orders under Illinois Supreme Court Rule 23(e) (eff. Jan. 1, 2021), entered before the effective date of the amended rule. Such orders are nonprecedential and may not be cited as persuasive authority. *Katz v. Hartz*, 2021 IL App (1st) 200331, ¶ 41.

¶ 37    The other cases are distinguishable. In *Gutierrez*, the trial court granted the defendant's petition "with the agreement of the State." *Gutierrez*, 376 Ill. App. 3d at 183. In *Torres*, the trial court granted the petition where the defendant demonstrated that his counsel was ineffective for failing to file a notice of appeal. *Torres*, 2021 IL App (1st) 181175-U, ¶ 24. Here, the State does not agree with the trial court's decision to grant the petition, nor has defendant established his ineffective assistance of counsel claim.

¶ 38    Resolution of defendant's ineffective assistance of counsel claim requires consideration of matters outside the record, such as trial counsel's testimony, and assessments of the parties' credibility. In postconviction proceedings, the trial court engages in these functions only at a third-

stage evidentiary hearing. *English*, 2013 IL 112890, ¶ 23. Following the course outlined in *Flores-Ortega*, we vacate the trial court's judgment granting the petition and remand for an evidentiary hearing. See *Wheeler*, 392 Ill. App. 3d at 311 (vacating the trial court's judgment granting the defendant's postconviction petition at the second stage without conducting an evidentiary hearing and remanding the case for a third stage hearing).

¶ 39    While the State also contends that defendant failed to make a substantial showing of a constitutional violation as required in a second stage proceeding, this issue is not properly before us. The State essentially argues that the trial court erred in denying its motion to dismiss defendant's petition. The State has not provided, nor have we found, any authority finding that it may appeal from the court's denial of its motion to dismiss at the second stage of postconviction proceedings. Instead, our supreme court has unequivocally stated that if a postconviction petition is not dismissed at the second stage, it advances to the third stage where the trial court conducts an evidentiary hearing. See *Bailey*, 2017 IL 121450, ¶ 18; *Edwards*, 197 Ill. 2d at 246; and *Gaultney*, 147 Ill. 2d at 418. We therefore decline to consider this contention.

¶ 40                                III. CONCLUSION

¶ 41    For the foregoing reasons, we vacate the trial court's order granting postconviction relief and remand the cause to the trial court for a third-stage evidentiary hearing on defendant's petition.

¶ 42    Vacated and remanded with instructions.