2024 IL App (1st) 230769-U

THIRD DIVISION
March 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 16524 |
| | ) | |
| DARIUS MOORE, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE DEBRA B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's sentence where the trial court did not consider a factor inherent in the offense, and it adequately considered evidence of defendant's rehabilitative potential in sentencing him.

¶ 2    Defendant Darius Moore appeals his sentence of eight years in prison, which the trial court imposed after his conviction for being an armed habitual criminal. On appeal, defendant contends that his sentence should be reduced to the statutory minimum where the trial court improperly

considered his possession of a firearm, a factor inherent in the offense, when it sentenced him to a term two years above the minimum. Defendant further contends that the trial court did not adequately consider the mitigating factors or his rehabilitative potential. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The following facts are taken, in part, from our prior opinion in *People v. Moore*, 2023 IL App (1st) 220919.

¶ 5        The State charged defendant with one count of being an armed habitual criminal, four counts of unlawful use or possession of a weapon by a felon, and four counts of aggravated unlawful use of a weapon. Defendant's bench trial was held on December 6, 2018. Three Chicago police officers, Joseph Lisciandrello, Thomas Bishop, and Alain Aporongao, testified at the trial.

¶ 6        On the evening of October 24, 2017, the officers were on patrol in an unmarked police vehicle. Each wore a protective vest bearing Chicago Police identification. As Officer Aporongao drove on the 1100 block of North Springfield Avenue, the other officers observed defendant walking south on the east side of the street. The area was illuminated by streetlights. When defendant saw them, he turned around and walked in the opposite direction. Defendant then attempted to conceal himself behind a parked vehicle.

¶ 7        Finding defendant's behavior suspicious, Officer Lisciandrello exited the vehicle to conduct a field interview. Defendant fled south on Springfield and Officer Lisciandrello ran after him. From 30 to 40 feet away, the officer observed defendant with "a black handgun in his right hand." Officer Lisciandrello shouted "gun" to alert his partners. Officer Aporongao stopped the vehicle at the intersection of Springfield and Thomas, where he and Officer Bishop joined in chasing defendant.

¶ 8    On the 1000 block of North Springfield, defendant attempted to jump a fence and fell. He then successfully jumped over that fence, ran through the yard and jumped over another fence as Officer Bishop chased him. Officer Lisciandrello continued to run south on Springfield. When defendant ran through a gangway onto Springfield, Officer Lisciandrello was waiting for him and placed him into custody.

¶ 9    Officer Bishop retraced defendant's steps to the back yard of 1057 North Springfield where he recovered a black semiautomatic firearm near the south fence line. The weapon appeared to be the same one Officer Lisciandrello observed as he chased defendant. Although the magazine was missing, the weapon contained one live round. Officer Aporongao recovered the missing magazine, which also contained live ammunition, in the area where defendant fell as he attempted to jump over the first fence. Neither Officer Bishop nor Officer Aporongao observed defendant with a firearm during the chase.

¶ 10    Defendant was transported to the police station where he was given *Miranda* warnings. Defendant told officers that he had the firearm for protection "because the block was into it." He obtained the weapon from someone named "Ant." Defendant's statement was not recorded.

¶ 11    After the officers testified, the State moved to include, as evidence, certified copies of defendant's prior convictions for unlawful use of a weapon by a felon and armed violence. Defendant rested without testifying or presenting evidence.

¶ 12    The trial court found "the officers' testimony credible, corroborated, [and] consistent," and convicted defendant of one count of being an armed habitual criminal and two counts of unauthorized use of a weapon by a felon. Defendant filed a motion for a new trial and on January 7, 2019, he filed an amended motion. In the amended motion, defendant alleged that the evidence was insufficient to prove his guilt beyond a reasonable doubt where only one officer observed

defendant with a firearm and that officer did not see defendant discard the firearm. The trial court denied defendant's motion for a new trial.

¶ 13    On January 17, 2019, the trial court held a sentencing hearing. The court acknowledged receipt of the presentence investigation report (PSI). The PSI indicated that defendant was abused as a child, and he suffered from depression and anxiety. Defendant attempted to commit suicide in 2012. The report also noted that defendant obtained his GED while incarcerated and he was employed by an auto parts company from 2016-2017. At the time of the hearing, defendant lived with his long-term girlfriend and their eight-month-old baby. He had a good relationship with his mother and received strong support from his girlfriend.

¶ 14    In aggravation, the State argued that defendant's criminal background was "substantial." The State informed the court that defendant had a prior conviction for armed violence for which he received an 18-year sentence. Furthermore, defendant was released on parole for that offense in February 2016, and he committed the present offense while on parole.

¶ 15    Defense counsel argued in mitigation that defendant's predicate convictions involved nonviolent offenses, and his only prior violent offense occurred when he was 19 or 20 years old. The instant case did not involve violence or injury to another person. Counsel asked the court to impose a lesser sentence. Defendant also addressed the court, offered his apology, and stated that he was young when he was convicted of the prior offenses. Now, he is "grown" with a job and an eight-month-old baby.

¶ 16    The trial court noted that defendant received his GED while imprisoned and he "had a job at a manufacturing plant." The court also acknowledged that defendant and his girlfriend now had an eight-month-old baby. It stated that it was "taking all that into consideration." The court continued:

"I just don't understand, Mr. Moore, you have the previous convictions. You're not suppose[d] to have a gun and here you are with a gun. However, I do take in to [*sic*] account the mitigation presented in your presentence investigation. And the facts of that case I take in to [*sic*] consideration as well. I do [find] that the background is already included in the sentencing arrangement, so your prior felonies caused you to be charged with a Class X felony where the minimum is six. However, I don't find that the minimum is appropriate for you in this case. Because of all the additional background and additional time you got. I do believe that close to the minimum is appropriate. Your sentence is going to be eight years Illinois Department of Corrections which is just two years over the minimum."

¶ 17    The trial court then admonished defendant concerning his right to appeal. Defendant did not file a motion to reconsider his sentence or a notice of appeal.

¶ 18    On October 28, 2020, defendant filed, through counsel, a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)). In the petition, defendant claimed that his trial counsel was ineffective because counsel failed to file a notice of appeal and a motion to reconsider sentence, thereby preventing defendant from exercising his right to appeal his conviction and sentence. Defendant requested that the trial court vacate his sentence and allow him to file a motion to reconsider sentence as well as "a Notice of Appeal nunc pro tunc to January 7, 2019."

¶ 19    The circuit court advanced defendant's petition to the second stage and the State filed a motion to dismiss the petition.

¶ 20    The court held a hearing on defendant's petition pursuant to the Act. On March 4, 2022, the court granted defendant's petition and allowed him to file a notice of appeal *nunc pro tunc*.

The court reasoned that the "higher courts" viewed the issue as one of "fundamental fairness regarding a constitutional right which is a right to appeal."

¶ 21 The State filed a motion to reconsider arguing, in relevant part, that the trial court could not grant relief under the Act at the second stage of postconviction proceedings. After a hearing, the trial court denied the motion because it was "satisfied" that defendant had a right to appeal, and it did not "see that there [are] any issues here that an evidentiary hearing would support or be dispositive of." The State appealed.

¶ 22 On appeal, the State argued that the trial court's grant of relief failed to comply with the provisions of the Act. This court agreed and remanded the matter for a third-stage evidentiary hearing. *Moore*, 2023 IL App (1st) 220919, ¶¶ 38-39. However, no evidentiary hearing was held because the State agreed to allow defendant to file a late notice of appeal, which was the relief requested in his petition. This court accepted defendant's late notice of appeal.

¶ 23                                  II. ANALYSIS

¶ 24 Defendant challenges his sentence on appeal. To preserve a claim of sentencing error, defendant must object at the sentencing hearing and file a written post-sentencing motion raising the issue. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Although defendant admits that he did not raise sentencing issues before the trial court at the sentencing hearing or in a posttrial motion, he argues that we may review the issue as plain error. To obtain relief under this doctrine, defendant must show either that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id*. The first step of plain-error review, however, is to determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 25    In sentencing a defendant, the trial court weighs the relevant sentencing factors, including the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *People v. Alexander*, 239 Ill.2d 205, 213. The court also considers the nature and circumstances of the crime and defendant's participation in it. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The trial court is in a superior position to determine the appropriate sentence based on its personal observation of the defendant and the proceedings. *Alexander*, 239 Ill.2d at 212–13. Therefore, reviewing courts generally defer to the trial court's considerable discretion in imposing a sentence. *Id.* at 212. We will not disturb the trial court's determination absent an abuse of discretion. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005).

¶ 26    Defendant was convicted of the Class X offense of being an armed habitual criminal, which carries a sentencing range of 6 to 30 years. See 720 ILCS 5/24-1.7 (West 2020). The trial court sentenced him to eight years in prison. A sentence within the statutory range is presumed proper unless it varies greatly with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Stacy*, 193 Ill. 2d 203, 210 (2000).

¶ 27    Defendant first contends that his sentence was excessive because the trial court improperly used his possession of a firearm to elevate his sentence above the six-year minimum. He bases his contention on the following remark made by the court at his sentencing hearing: "I just don't understand, Mr. Moore, you have the previous convictions. You're not supposed to have a gun and here you are with a gun." Defendant argues that the trial court should not have considered his possession of a firearm in aggravation because such possession is an implicit factor in every armed habitual criminal offense.

¶ 28    We agree that a court should not consider a factor inherent in the offense as an aggravating factor in sentencing. See *People v. Conover*, 84 Ill.2d 400, 404 (1981) (finding that the receipt of

proceeds should not be an aggravating factor in sentencing an offender convicted of burglary because such receipt is an implicit factor in most burglaries). However, when determining whether defendant's sentence was improperly imposed, "we must not focus on a few words or statements of the trial court. Rather, the determination of whether or not the sentence was improper must be made by considering the entire record as a whole." *People v. Ward*, 113 Ill. 2d 516, 526–27 (1986).

¶ 29    In sentencing defendant, the trial court began by telling him, "[y]ou're not supposed to have a gun and here you are with a gun." The court then mentioned factors it considered in determining an appropriate sentence. The trial court never stated that it considered defendant's possession of a firearm an aggravating factor in sentencing. Rather, after noting that the minimum sentence for the offense was six years, the court remarked, "I don't find that the minimum is appropriate for you in this case. Because of all the additional background and additional time you got. I do believe that close to the minimum is appropriate."

¶ 30    It is clear from the context of the entire statement that the court believed a sentence slightly above the minimum was appropriate due to defendant's criminal background, not because he had a firearm. The fact that defendant had a history of criminal activity was properly considered an aggravating factor in sentencing. See 730 ILCS 5/5-5-3.2 (a)(3) (West 2020); *People v. Peve*, 209 Ill. App. 3d 1021, 1024 (1991). Furthermore, the trial court's mere mention of defendant's possession of a firearm, an element of the armed habitual criminal offense, did not constitute reversible error. "[I]n announcing its sentencing decision, the trial court is not required to refrain from any mention of the factors which constitute elements of an offense." *People v. Andrews*, 2013 IL App (1st) 121623, ¶ 15. We find that the trial court did not improperly sentence defendant based on his possession of a firearm.

¶ 31    Defendant also contends that his sentence was excessive where the trial court did not adequately consider the mitigation evidence presented at the hearing or his rehabilitative potential.

¶ 32    The Illinois Constitution provides that in sentencing a defendant, the trial court shall balance "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A reviewing court grants the trial court "substantial deference" in sentencing because the trial court personally observed the defendant and the proceedings. *People v. Snyder*, 2011 IL 111382, ¶ 36. As long as the trial court did not consider incompetent evidence or ignore pertinent mitigating factors, it had broad discretion to sentence a defendant to any term within the applicable statutory range. *People v. Perkins*, 408 Ill.App.3d 752, 762–63 (2011). The trial court is presumed to have properly considered all mitigating factors and rehabilitative potential before it, and defendant bears the burden to overcome that presumption. *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 95. We will not substitute our judgment for that of the trial court merely because we would have weighed the sentencing factors differently. *Alexander*, 239 Ill. 2d at 213.

¶ 33    Here, the trial court stated that it considered the mitigating evidence in the PSI, which contained information on defendant's background as a physically abused child as well as his mental health struggles. The trial court specifically noted defendant's receipt of his GED and that he "had a job at a manufacturing plant." The court further acknowledged defendant's girlfriend and eight-month-old baby. The court stated that it was "taking all that into consideration."

¶ 34    Defendant argues, however, that the record does not show the trial court considered defendant's relationship with his daughter or the disruption to her life his sentence would cause. He further argues that the court never "mentioned the words 'rehabilitative potential' nor actually considered whether [he] could be restored to useful citizenship."

¶ 35    Although the court did not explicitly mention defendant's relationship with his daughter or his rehabilitative potential, it is not required to articulate every factor it considered in determining an appropriate sentence. *People v. Ramos*, 353 Ill. App. 3d 133, 137-38 (2004). Rather, we presume that the court considered all relevant factors before it, absent evidence in the record to the contrary. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 23. Defendant has not overcome that presumption. Nothing in the record indicates that the trial court failed to consider the relevant mitigating factors that were present in the PSI or mentioned by defendant's counsel during the sentencing hearing.

¶ 36    Defendant's final contention is that, given his potential for rehabilitation, the seriousness of his offense did not warrant an eight-year sentence. He notes that armed habitual criminal is a possessory offense, and his conduct did not cause anyone physical harm. Also, evidence of his prior convictions included only non-violent offenses that occurred when he was an adolescent. He concludes that the trial court did not give proper weight to his rehabilitative potential.

¶ 37    Rehabilitative potential is only one factor to consider, and it is not entitled to more weight than any other factor. *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007). Moreover, the mere existence of mitigating evidence does not obligate the court to impose the minimum sentence. *People v. Sims*, 403 Ill. App. 3d 9, 24 (2010). Although the trial court found the minimum sentence inappropriate for defendant, it did believe that "close to the minimum [was] appropriate." The court thus imposed a sentence of eight years, which was only two years above the minimum and 22 years less than the maximum sentence defendant could have received. We find no abuse of discretion here. Since we have found no error, there can be no plain error. *People v. Bannister*, 232 Ill. 2d 52, 71 (2008).

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 40    Affirmed.