2020 IL App (1st) 171727

FIRST DISTRICT
SIXTH DIVISION
December 18, 2020

No. 1-17-1727

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 20276 |
| | ) | |
| PEDRO GUERRA, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Cunningham and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Pedro Guerra was convicted of aggravated driving under the influence (DUI) and sentenced to two years' probation and 300 hours' community service, which the trial court later modified to two years' probation and 10 days' imprisonment. He appeals, contending that trial counsel was ineffective for not asking the trial court to take judicial notice of the National Highway Traffic Safety Administration's (NHTSA) manual providing standards for conducting the horizontal gaze nystagmus (HGN) field sobriety test. We affirm.

¶ 2                                    I. JURISDICTION

¶ 3    Defendant was convicted following a 2016 bench trial and sentenced on May 24, 2017, to probation and community service. On June 21, 2017, defendant (through counsel) filed both a notice of appeal and a motion to modify his sentence. On June 23, 2017, the court modified

defendant's sentence to vacate his community service and impose 10 days' imprisonment instead. A notice of appeal was sent on June 30, 2017.

¶ 4 Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017) governing appeals from a final judgment of conviction in a criminal case. In particular, the June 21 notice of appeal was rendered of "no effect" (Ill. S. Ct. R. 606(b) (eff. July 1, 2017)) by the motion to modify sentence, but jurisdiction was then vested by the June 30 filing.

¶ 5                                    II. BACKGROUND

¶ 6 Defendant was arrested on December 4, 2015, and charged with two counts of aggravated DUI and two counts of driving with a revoked or suspended license. The State proceeded on the aggravated DUI counts (625 ILCS 5/11-501(a)(2) (West 2014)), which alleged that defendant drove or was in actual physical control of a vehicle while under the influence of alcohol, and for purposes of sentencing as a Class 4 offender, at such time that his driving privileges were revoked (count I) and suspended (count II).

¶ 7 Lisa Brendel testified that on December 4, 2015, she was driving near the intersection of Kostner Avenue and Archer Avenue in Chicago at around 6:15 a.m. or 6:20 a.m. when her vehicle was struck by a vehicle driven by defendant. Brendel's airbags deployed. She and defendant, whom Brendel identified in court, exited their vehicles and conversed. Brendel noticed defendant's eyes were "glassy." He asked Brendel what she wanted to do, and she said they should wait for

the police. The police arrived, and Brendel explained the situation to Officer Castaneda.[1] Brendel did not go to the hospital, but her vehicle was totaled.

¶ 8    On cross-examination, Brendel stated that defendant's vehicle had damage to the "[l]eft front panel" but she did not know if it was undrivable. She smelled alcohol on defendant during their conversation, which she told "the officer." Brendel stood about two feet from defendant when she smelled the alcohol.

¶ 9    Castaneda testified that on December 4, 2015, at 6:20 a.m., she responded to a traffic accident near the 5100 block of Kostner Avenue. When she arrived, defendant, whom she identified in court, was standing by his vehicle. Castaneda smelled alcohol on his breath and noticed that his "crotch area was wet with urine." He had "slurred" speech and glassy eyes. Castaneda also spoke with Brendel on the scene. The front of Brendel's vehicle was "smashed," and it did not "look drivable." Defendant's vehicle had damage to "the front and driver's side door."

¶ 10    Castaneda asked defendant to perform a series of field sobriety tests. First, she performed the HGN test, using her pen as a stimulus and asking defendant to follow it with his eyes without moving his head. She noticed defendant made a "jerking" movement and noted a distinct nystagmus at maximum deviation in both eyes. After refreshing her recollection with People's Exhibit No. 1, her alcohol and drug influence report, Castaneda agreed that there was onset prior to 45 degrees. Castaneda believed these were indications that defendant was possibly intoxicated.

¶ 11    Castaneda next asked defendant to perform the one-leg stand test. She instructed defendant to hold his foot three inches off the ground for 30 seconds and demonstrated the test for him. He

---

[1] Castaneda's first name does not appear in the report of proceedings.

was unsuccessful, bringing his foot down "more than three times." After reviewing her report, Castaneda confirmed that defendant also swayed during this test.

¶ 12   She then asked defendant to perform the walk-and-turn test, which she also demonstrated. During this test, defendant stopped to steady himself, failed to "hit the heel to toe more than three times," lost his balance, turned "incorrectly," and took an incorrect number of steps. Castaneda believed these failures indicated alcohol intoxication. She had seen intoxicated people in her 18 years as an officer and in her personal life more than 1000 times and opined that on December 4, 2015, defendant was intoxicated and had driven under the influence of alcohol.

¶ 13   Castaneda asked defendant if he would submit to a breath test at the police station. Defendant refused and was then taken to the hospital. After discharge, defendant was brought to the police station around 11 a.m. that morning, where he again refused a breath test.

¶ 14   On cross-examination, Castaneda stated that she understood defendant during their conversation. Defendant told her he had the green light. Castaneda could "immediately smell alcohol" on his breath. She initially could not recall if she asked defendant if he had consumed alcohol, though she believed she would have. After reviewing her arrest report and the alcohol and drug influence report, she testified that she did not ask defendant if he had been drinking.

¶ 15   Castaneda testified that she held her pen "six inches" from defendant's face during the HGN test. Defendant's eyes were glassy but not dilated. She underwent the training for the HGN test in 2010 or 2011 but could not recall if she had additional training between the initial course and December 4, 2015. Castaneda agreed there are other reasons besides alcohol consumption that someone might demonstrate stigmatus. She believed she likely asked defendant whether he had any medical conditions but did not document this in her report. During the one-leg stand, defendant

did not raise his arms for balance and was not hopping, nor did he lose his balance or use his arms to balance during the walk-and-turn. Castaneda could not recall if she went to the hospital with defendant.

¶ 16    The State entered a certified abstract from the Illinois Secretary of State showing that on December 4, 2015, defendant's privilege to drive was suspended and revoked and a certified copy of defendant's vehicle registration showing that he owned the vehicle involved in the crash.

¶ 17    Defendant testified that he was coming from his father's house on the morning of the accident when Brendel ran a red light and hit his vehicle. Brendel helped defendant exit his vehicle because of the damage to his driver's side door. A Chicago police canine unit stopped at the scene, and defendant approached the officer. The officer said he could not assist, so defendant called 911. He also called his mother.

¶ 18    Later, Castaneda arrived with another male officer, whom defendant spoke with first. Defendant told the male officer that his side hurt and his mother was on the way. Afterwards, Castaneda approached defendant and conducted the field sobriety tests, with which he cooperated. After defendant completed the tests, the male officer took defendant to the hospital. Neither Castaneda nor the male officer asked defendant to take a breath test. Defendant did not consume alcohol on the morning of December 4, 2015, or the night before.

¶ 19    On cross-examination, defendant testified that he did not tell Castaneda that he was injured prior to the HGN test because he heard the male officer tell her. He might have put his foot down once or twice during the one-leg stand test, but took the right number of steps during the walk-and-turn test. He denied urinating on himself, and said his pants may have been wet because water

spilled on them. On redirect, defendant explained that there was a bottle of water in his cup holder that may have spilled during the accident.

¶ 20     During closing argument, defense counsel argued that defendant was credible while Castaneda was not, and the prosecutor responded in rebuttal that defendant's denial that Castaneda requested a breath test was incredible. The court found defendant guilty on counts I and II for aggravated DUI. In so holding, the court stated that defendant's testimony that Castaneda never requested a breath test made no sense and found that defendant's breath test refusal evidenced consciousness of guilt.

¶ 21     During a hearing on defendant's motion for a new trial, trial counsel argued that Castaneda's testimony was incredible. The court responded that it credited Castaneda's testimony that defendant twice refused breath tests, described his refusals as "significant," and further noted that defendant did not "do so well" on the "preliminary tests." The court denied the motion, concluding that Castaneda was "credible" and that "I didn't believe [defendant] about the events."

¶ 22     After a hearing on May 24, 2017, the court merged count II into count I and sentenced defendant to two years' probation and 300 hours' community service. On June 21, 2017, defendant filed a motion to "[m]odify [p]robation." On June 23, 2017, the court vacated his community service and modified his sentence to 10 days' imprisonment in addition to probation.

¶ 23                                        III. ANALYSIS

¶ 24     On appeal, defendant contends that trial counsel was ineffective for not asking the trial court to take judicial notice of a NHTSA manual providing that an officer performing the HGN field sobriety test should hold the pen 12 to 15 inches from the subject's face. According to defendant, had defense counsel introduced the NHTSA standard at trial, Castaneda's testimony

regarding the HGN test would have lost probative value, and her other testimony thereby rendered so questionable that the court would have rejected her opinion that defendant was intoxicated and found him not guilty.

¶ 25    Criminal defendants are entitled to effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "To establish a claim of ineffective assistance of counsel, [a] defendant must show that his counsel's performance was deficient and that it resulted in prejudice." *People v. Staake*, 2017 IL 121755, ¶ 47. Matters of trial strategy, including what evidence to present, are typically immune to claims of ineffective assistance of counsel. *People v. West*, 187 Ill. 2d 418, 432 (1999). Respecting prejudice, the defendant must show that there is a "reasonable probability" the trial result would have been different had the deficient conduct not occurred. *People v. Dupree*, 2018 IL 122307, ¶ 44. The defendant must establish both elements, and if the defendant cannot demonstrate prejudice, the reviewing court need not decide whether the underlying conduct was deficient. See *People v. Evans*, 186 Ill. 2d 83, 94 (1999).

¶ 26    To prove defendant guilty of aggravated DUI, the State needed to show that defendant drove or was in actual control of a vehicle while under the influence of alcohol and while his privilege to drive was suspended or revoked. 625 ILCS 5/11-501(a)(2) (West 2014). Here, defendant claims counsel's conduct was deficient because the NHTSA HGN standard evidence would have discredited Castaneda's testimony and thus weakened the State's evidence that he was under the influence of alcohol.

¶ 27    To support this claim, defendant's brief references a NHTSA standard from the "DWI Detection and Standardized Field Sobriety Testing (SFST) Participant Manual, February 2018 Edition." Defendant claims that the NHTSA guidelines require an officer performing the HGN test

to hold the pen 12 to 15 inches from the subject's face, in contrast to Castaneda's testimony that she held her pen 6 inches from defendant's face.

¶ 28    At the outset, we observe that the NHTSA manual was not introduced at trial and does not appear in the record on appeal. See *People v. Heaton*, 266 Ill. App. 3d 469, 477 (1994) ("The purpose of appellate review is to evaluate the record presented in the trial court, and review must be confined to what appears in the record."). Thus, defendant's argument that counsel was deficient is based on matters outside of the trial record, making his claim inappropriate for resolution on direct appeal. See *People v. Bew*, 228 Ill. 2d 122, 134 (2008) (ineffective assistance of counsel claims are best raised in collateral proceedings, particularly where the record on direct appeal is insufficient to resolve the claim (citing *United States v. Massaro*, 538 U.S. 500, 504-06 (2003))).

¶ 29    Moreover, defendant's ineffective assistance claim fails because he cannot demonstrate prejudice from the alleged deficiency. Brendel testified that defendant smelled of alcohol and had glassy eyes. Castaneda also testified that defendant smelled of alcohol and had glassy eyes and added that he urinated on himself and slurred his speech. She believed that defendant showed signs of intoxication during each field sobriety test and detailed his failures to keep his foot off the ground during the one-leg stand test (which defendant admitted) and to take the correct number of steps in the correct fashion during the walk-and-turn test. Finally, she testified that defendant twice refused a breath test. Defendant refuted these accounts. He denied that he drank alcohol that morning, claimed his pants were wet with water that spilled during the accident, and stated that the officers never requested that he take a breath test. The trial court found the State's witnesses more credible than defendant and stated that defendant's testimony that Castaneda never asked for a breath test made "no sense."

¶ 30    On this record, there is not a reasonable probability that defendant's guilty finding would have been altered by a successful request from trial counsel for the court to take judicial notice of the NHTSA requirement. This case turned on credibility, which is the province of the fact finder, and the court here largely based its credibility determination between Castaneda and defendant on matters unrelated to the HGN test. See *People v. Bradford*, 2016 IL 118674, ¶ 12 (during a bench trial, the court is the fact finder, and it is the court's responsibility to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence). Specifically, the court found that defendant's denial that Castaneda requested a breath test was incredible, which was a reasonable basis from which to resolve the credibility dispute. After concluding that defendant refused the breath test, the court was then permitted by law to treat defendant's refusal as competent evidence of consciousness of guilt. See *People v. Johnson*, 218 Ill. 2d 125, 140 (2005). Additionally, as described above, Brendel testified that defendant smelled of alcohol and had glassy eyes, which corroborates Castaneda's testimony regarding indications of defendant's intoxication. It follows that even had the NHTSA evidence removed probative value from Castaneda's HGN test testimony, the court's bases for crediting Castaneda's testimony over defendant's regarding the other field sobriety tests, the indications of defendant's intoxication, and whether she requested a breath test would have remained unaffected.

¶ 31                                    IV. CONCLUSION

¶ 32    In sum, defendant's ineffective assistance of counsel claim fails because he cannot establish deficient performance or prejudice, and his conviction is therefore affirmed.

¶ 33    Affirmed.

**No. 1-17-1727**

| | |
|---|---|
| **Cite as:** | *People v. Guerra*, 2020 IL App (1st) 171727 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CR-20276; the Hon. Stanley J. Sacks, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Benjamin Wimmer, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Matthew Connors, Assistant State's Attorneys, of counsel), for the People. |