2024 IL App (1st) 230325-U

No. 1-23-0325

Order filed August 30, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 8020 |
| | ) | |
| GIOVANNI GARCIA, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:  We affirm the summary dismissal of defendant's postconviction petition where he failed to make an arguable claim of ineffective assistance of trial counsel.

¶ 2    Defendant Giovanni Garcia appeals from the circuit court's order summarily dismissing his petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). He argues his petition stated an arguable claim that he received ineffective assistance of trial counsel. For the following reasons, we affirm.

¶ 3     Following a 2019 jury trial, defendant was convicted of the first degree murder of Lauren Membreno and the attempted murder of Edwin Montano. He was sentenced to consecutive terms of 50 and 26 years' imprisonment, respectively. As we described the facts fully in our order from defendant's direct appeal (*People v. Garcia*, 2021 IL App (1st) 192576-U), we recite them here only as necessary to resolve the issue on appeal.

¶ 4     At trial, Montano testified that in April 2016 he and Membreno were dating. Around 6:30 p.m. on April 8, 2016, the two went in Membreno's Volkswagen Beetle to a Jewel grocery store on 54th Street and Pulaski Avenue, in Chicago. The Jewel was about two blocks from Montano's house on Karlov Avenue. Membreno entered the store and Montano remained in the vehicle's passenger seat. Three men exited the Jewel. One was defendant. Montano had previously purchased marijuana from defendant, but stopped after defendant "shorted" him.

¶ 5     Since that time, Montano had seen defendant twice. Of those times, once, in October 2015, defendant and two other men "beat [him] up." Thus, Montano was nervous about seeing defendant in the Jewel parking lot. He exited Membreno's vehicle to move to the driver's seat so he could leave. However, when he exited, he and defendant began arguing and calling each other names. The two then went their "separate ways," and Montano returned to the passenger's seat of Membreno's vehicle. He then moved to the driver's seat from inside the vehicle to pick up Membreno when she exited the store.

¶ 6     After Montano picked up Membreno from the front of the store, he observed defendant and his companions in a silver Honda sedan. Montano followed the Honda in the parking lot to try and learn its license plate number and call the police. The Honda turned out of the parking lot onto Pulaski; Montano and Membreno turned out of the parking lot onto 54th, then turned south down

Karlov. Montano parked about 15 to 20 yards from his home. Karlov was a one-way street, and Montano parked on the left side, with the driver's side toward the curb and the passenger side toward the street. He and Membreno remained in the vehicle for about 15 minutes talking while Membreno smoked a cigarette.

¶ 7    At the end of that time, Montano heard tires and brakes "screeching" as a vehicle stopped to his right. He turned and saw the silver Honda. The Honda was slightly ahead of Montano and Membreno's vehicle, and through the windshield Montano saw defendant pointing a revolver at him from the driver's seat. There were also two passengers in the Honda. Montano ducked and told Membreno to do the same. He heard a gunshot and shattering glass. He looked at Membreno and saw Membreno had been shot on the right side of her forehead through the passenger window. The silver Honda drove away. Montano ran inside his house for napkins and a charger for his cell phone, which was dying, to call the police. He returned to the vehicle about 30 seconds later, applied pressure to Membreno's wound, and called the police.

¶ 8    When police officers arrived, Montano told an officer about the events at the Jewel and that "Gio" shot Membreno. Police took Montano back to the Jewel, where he viewed surveillance videos. They then took him to the police station, where he told a sergeant that "Giovanni Garcia" shot Membreno and identified defendant in a photograph array.

¶ 9    Surveillance video footage from the Jewel was published at trial and Montano narrated the events depicted. The video is not included in the record on appeal in the instant case, but we described its contents in our order from defendant's direct appeal. See *Garcia*, 2021 IL App (1st) 192576-U, ¶¶ 16-17. We stated that the video depicted a silver vehicle park near a Beetle that Montano identified as Membreno's. *Id.* ¶ 16. Three individuals exit that vehicle and walk past the

Beetle, and two men later return past the Beetle. *Id.* Montano identified one as defendant and testified he was carrying dry cleaning. *Id.* The video then depicted Montano "standing next to" the Beetle and approaching defendant. *Id.* He follows defendant around the vehicle next to the Beetle. *Id.* Montano then reenters the passenger's side of the Beetle while defendant gestures towards him and "walks toward the next line of vehicles." *Id.* Montano testified that during this interaction he had an 18-inch "mini bat" tucked in his pants. *Id.* Montano testified that he moved from the passenger's seat to the driver's seat of the Beetle. *Id.*

¶ 10 Shortly thereafter, the Beetle backs out of its parking spot, drives offscreen, and reappears in front of the store. *Id.* ¶ 17. While it is offscreen, defendant enters the silver vehicle that had previously parked near the Beetle. *Id.* At the front of the store, Membreno reenters the Beetle, which drives offscreen again but then reappears and drives up to the silver vehicle defendant entered. *Id.* The silver vehicle backs out of its parking spot and drives "quickly" out of the parking lane, "with the Beetle following closely behind." *Id.* Both vehicles turn down the next parking lane and disappear offscreen. *Id.*

¶ 11 An employee of a dry cleaner's business next to the Jewel testified that, around 6:40 p.m. on April 8, 2016, someone picked up dry cleaning that had been dropped off under defendant's name. Two police officers testified that they went to the scene of the shooting and Montano told them the shooter was named "Giovanni." Another detective testified that defendant was arrested on April 21, 2016, and the men with him at the Jewel could not be identified. A medical examiner testified that Membreno died of homicide from a gunshot wound to the head.

¶ 12 Before the defense presented its witnesses, the court asked defendant if he understood that he had the right to testify, and defendant said yes. Defendant also understood that he had the right

to choose not to testify. Defendant stated he did not wish to testify. Defendant understood that whether to testify was something he should discuss with his attorneys but was ultimately his choice. No one had forced or threatened him not to testify. The court asked if anybody had promised defendant anything not to testify, and defendant answered "Yes, sir." The court then asked whether he was deciding not to testify of his own free will, and defendant answered that he was. Asked by the court whether he had any questions about what the court had said, defendant stated he did not.

¶ 13    Two defense witnesses testified regarding the shooting. One was in her house on Karlov and heard a noise like "thunder." She looked out a window and saw a man standing outside a gray Volkswagen "looking nervous" and walking around "as if looking for help." The man went into a home a few doors down, the police arrived, and the man returned to the Volkswagen. The other witness was walking his dog on Karlov and saw a man park a silver Volkswagen. As the man exited the Volkswagen, the witness heard a "shooting sound," breaking glass, and wheels squealing. The witness saw a dark sedan driving fast and entering an alley. The man who had parked the Volkswagen ran toward a house and asked the witness to call the police. Police arrived and the man returned.

¶ 14    The circuit court then asked defendant if it was still his decision not to testify. Defendant confirmed it was.

¶ 15    Following argument, the jury found defendant guilty of first degree murder and attempted murder. Defendant's counsel filed a motion and supplemental motion for a new trial.

¶ 16    On September 10, 2019, the date set for hearings on the posttrial motions and sentencing, defendant informed the court that he was firing his attorneys, would adopt the motion for a new

trial, and wanted "to trigger" a hearing for ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant claimed his attorneys provided ineffective assistance by failing to contact alibi witnesses, prepare him for trial, and file a motion to quash his arrest. The court then allowed defendant to argue regarding counsels' alleged ineffective assistance.

¶ 17     Defendant informed the court the alibi witnesses were David Lozano and Adrian Ramos, who were the men appearing with defendant in the video from the Jewel. Defendant argued Lozano and Ramos would testify that, after the incident at the Jewel, the three went to Lozano's house and remained there the rest of the day. Under questioning by the court, defendant stated he did not tell his attorneys that he was at Lozano's house at the time of the shooting. Defendant stated he felt unprepared for trial because his attorneys never visited him. He claimed a visitation log showed that "an intern" visited him once. Defendant's lead attorney, Marijane Placek, interjected that that person was her clerk and, although the clerk signed the visitors' log, she accompanied him. Defendant stated he only spoke with his attorneys once while his case was pending.

¶ 18     The court noted that Placek had appeared on defendant's behalf approximately 30 times since July 2016. The court had observed that, when Placek arrived in the courtroom, she spent "a high percentage" of her time in the lockup area where defendant was confined before his case was called. Defendant responded that his conversations with her in those moments were too short to prepare for trial. When asked what he would have told Placek at the jail that he could not tell her in court, defendant stated it was his "whole trial strategy," and his "whole output on the whole case as far as the witnesses, [his] side of the story."

¶ 19    Defendant also argued counsel was ineffective for failing to file a motion to quash, but conceded no evidence was recovered as a result of his arrest. The court asked if defendant wanted to make any other allegations about counsel, and defendant declined.

¶ 20    The circuit court asked defense counsel to address defendant's allegation that he was not prepared for trial. Placek stated she and several clerks spoke to defendant before co-counsel, Vince Colucci, came on the case. Colucci stated he also visited defendant in jail. During his visits, they discussed the evidence and possible defenses. Placek and Colucci stated that defendant never told them he was at Lozano's house at the time of the shooting. Rather, he told them that he was present at the shooting but two witnesses, whom he identified only by their first names, would testify that he was not the shooter. Placek told defendant she did not believe that would be the best defense they could put on. Counsels told the court they were unable to locate the two witnesses as defendant only gave their first names: David and Adrian. Someone named David had called Placek's office but refused to give a last name, stated he did not want to get involved, was leaving the state, and feared being charged.

¶ 21    Defendant denied that he told counsels he was at the scene of the shooting. He maintained that "from the beginning," he "always had an alibi, that's why [he had] alibi witnesses." It would not make sense to only give Lozano and Ramos's first names. The court asked if there was anything else he wanted to say, and he declined.

¶ 22    The court found that defendant had not established a sufficient basis for the appointment of new counsel to argue his claims. The court noted that defendant stated he never told his attorneys about his alibi that he was at Lozano's house at the time of the shooting, and counsels had attempted to locate the witnesses he named but for whom he provided no last name. Further, the

court did not see what else counsels should have done to prepare defendant for trial given he declined to testify. Based on counsels' responses and the court's observations of the trial, the court found defendant did not receive ineffective assistance.

¶ 23 At defendant's request, counsel argued defendant's motion for a new trial. The court denied the motion. Following a sentencing hearing, the court sentenced defendant to 50 years' imprisonment for murder and 26 years' consecutive imprisonment for attempted murder.

¶ 24 On direct appeal, defendant argued, *inter alia*, that the court improperly conducted the preliminary *Krankel* inquiry because it relied on speculation and evidence outside the record, and permitted the inquiry to "become adversarial" by crediting defense counsels' statements rather than holding an evidentiary hearing with new counsel. *Garcia*, 2021 IL App (1st) 192576-U, ¶¶ 96, 99. We rejected those arguments, and affirmed. *Id.* ¶¶ 97-102, 112-13.

¶ 25 On October 25, 2022, defendant filed, through counsel, a petition for relief under the Act. He argued that trial counsels provided ineffective assistance by failing "to reasonably investigate his case and develop exculpatory evidence." He alleged that, before trial, counsels "did not spend sufficient time with [him] to learn the facts about what happened" and discuss "how those facts could form the basis for a defense." Specifically, counsels failed to investigate and contact Jason Steinberg and Mariela Lopez, whom defendant told on the night of the shooting that he had been in a vehicle with Lozano at the scene and Lozano had shot Membreno. Defendant asserted that counsels "knew or reasonably should have known" that Lozano may have been the shooter as (1) counsels stated during the preliminary *Krankel* inquiry that defendant had told them he was at the scene of the shooting but did not kill Membreno, (2) defendant had told them Lozano was also at the scene, and (3) Lozano had told Placek he would not get involved and feared being charged. He

claimed counsels should have investigated that defense by "spending the time with [him] to identify whether he had made any contemporaneous statements to anyone about what had happened" and interviewing those people.

¶ 26     Defendant continued that, if counsels had done so, they could have presented evidence at trial that Lozano was the shooter, "including [defendant's] testimony." Steinberg and Lopez's testimony about defendant's prior consistent statements would have been admissible to rebut a charge that his testimony was recently fabricated. Counsels' failure to perform a reasonable investigation prejudiced defendant as there was a reasonable probability the jury would have acquitted him had counsels "developed the facts showing that Lozano" was the shooter "and presented that evidence at trial (including through the testimony of [defendant], Steinberg, and Lopez)."

¶ 27     Defendant attached to his petition his unnotarized "affidavit." He stated therein that, at the time of the shooting, he was in a vehicle with Lozano, who had a handgun. As the vehicle drove by a vehicle occupied by Membreno and Montano, Lozano drew his firearm and fired the shot that killed Membreno. Defendant had not known Lozano intended to use his firearm. Later that evening, defendant had a telephone conversation with Steinberg, a family friend, and told him what Lozano had done. Defendant also had an in-person conversation that evening with Lopez, his girlfriend, and told her the same. Before trial, Placek and Colucci "did not spend sufficient time with [defendant] to learn the facts about what happened" at the time of the shooting or discuss how those facts could form a defense.

¶ 28     Defendant also attached an unnotarized "affidavit" from Steinberg. Steinberg stated therein that, on the evening of April 8, 2016, he had a telephone conversation with defendant in which

defendant told him he had been in a vehicle with Lozano, they drove by a vehicle occupied by Membreno and Montano, and Lozano drew his firearm and shot Membreno. Defendant's attorneys had never contacted Steinberg. Defendant did not attach an affidavit or statement from Lopez, but stated in the petition that Lopez had "confirmed" defendant's allegations about their conversation to postconviction counsel but counsel "ha[d] not yet been able to obtain an affidavit" from her.

¶ 29 On January 6, 2023, the circuit court issued a written order summarily dismissing defendant's petition. The court found that defendant's claim was barred by *res judicata* as he claimed during the preliminary *Krankel* inquiry that trial counsel did not sufficiently investigate his case, the trial court rejected his claim, and this court affirmed on direct appeal. Further, defendant forfeited the claim as he did not assert during the *Krankel* inquiry that counsels failed to speak with Steinberg or Lopez.

¶ 30 The court noted that his new allegation that he was at the scene of the shooting but Lozano was the shooter was directly contradicted by his contentions during the *Krankel* inquiry that he was at Lozano's house at the time of the shooting. Moreover, during the *Krankel* inquiry, defendant explicitly rejected counsels' contentions that he had told them he was at the scene of the shooting but was not the shooter. Rather, he claimed that he "always had an alibi," which he would have told them if they had spent more time with him before trial.

¶ 31 The court additionally found defendant's claim without merit. The court noted that Steinberg and Lopez's testimony would only be admissible as prior consistent statements if the State argued that defendant's testimony that Lozano was the shooter was a recent fabrication. However, defendant did not testify at trial, meaning the State could not have made any such argument and there was therefore no basis for introducing Steinberg and Lopez's testimony. Thus,

even if counsel was deficient in failing to learn about and interview Steinberg and Lopez, the outcome of defendant's trial would have been the same. Consequently, defendant could not establish he was prejudiced by counsel's alleged failure.

¶ 32 Defendant now appeals. He argues that the court erred in summarily dismissing his petition because he raised an arguable claim that trial counsels provided ineffective assistance.

¶ 33 The Act allows a defendant to challenge his conviction based on a substantial denial of his constitutional rights. *People v. Urzua*, 2023 IL 127789, ¶ 32. Proceedings under the Act consist of three stages. *People v. House*, 2021 IL 125124, ¶ 16. At the first stage, the circuit court independently reviews the petition and determines whether it is frivolous or patently without merit. *Id.* (citing 725 ILCS 5/122-2.1(a)(2) (West 2022)). If it so finds, it may summarily dismiss the petition. *Id.* The court here summarily dismissed defendant's petition at the first stage. We review *de novo* a first stage dismissal. *People v. Laney*, 2024 IL App (1st) 221129, ¶ 50.

¶ 34 A petition is frivolous or patently without merit if its allegations, "taken as true and liberally construed, fail to present the gist of a constitutional claim." (Internal quotation marks omitted.) *Id.* A petition should only be summarily dismissed under this standard if it "has no arguable basis either in law or in fact," or "relies on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Knapp*, 2020 IL 124992, ¶ 45. A legal theory is meritless if it is "completely contradicted by the record." *Id.* Moreover, while "well-pled factual allegations" are taken as true, to survive summary dismissal a petition must include more than "nonfactual and nonspecific assertions" or broad, conclusory allegations. *People v. Lewis*, 2017 IL App (1st) 150070, ¶¶ 14, 16.

¶ 35 Additionally, a claim has no basis in law and should therefore be summarily dismissed if it is barred by *res judicata* or forfeited. *People v. Johnson*, 2021 IL 125738, ¶ 48. A claim is barred by *res judicata* if it was raised and decided on direct appeal. *People v. Moore*, 2023 IL App (1st) 220919, ¶ 23. An issue is forfeited if it could have been raised on direct appeal but was not. *Id.*

¶ 36 Here, defendant claims he received ineffective assistance of trial counsel based on counsels' failure to investigate Steinberg and Lopez, interview them, and present their testimony at trial.

¶ 37 The State responds that defendant's claim is barred by *res judicata* where he argued during the preliminary *Krankel* inquiry that counsel was ineffective for failing to investigate the case, the court declined to appoint new counsel and advance his claims to a full *Krankel* hearing, he challenged that ruling on direct appeal, and we affirmed. The State further argues that defendant's claim is forfeited as he did not assert during the *Krankel* inquiry or on direct appeal that counsels were ineffective for failing to investigate and interview Steinberg and Lopez.

¶ 38 On direct appeal, defendant challenged whether the court properly conducted the preliminary *Krankel* inquiry, not whether trial counsels were ineffective for failing to investigate Steinberg and Lopez. *Garcia*, 2021 IL App (1st) 192576-U, ¶ 96. His claim is therefore not barred by *res judicata* as it was not raised and decided on direct appeal. *Moore*, 2023 IL App (1st) 220919, ¶ 23.

¶ 39 As to forfeiture, we agree with defendant that he could not have raised the issue on direct appeal as it is based on allegations outside the trial record. See *People v. Guerra*, 2020 IL App (1st) 171727, ¶ 28 (claims of ineffective assistance based on matters outside of the trial record are inappropriate for direct appeal). Further, this court has stated that an issue is not forfeited by a

failure to raise it during a preliminary *Krankel* inquiry. *People v. Teen*, 2023 IL App (5th) 190456, ¶ 66 (a defendant "does not forfeit ineffectiveness claims not presented at the *Krankel* hearing"), *petition for cert. filed*, No. 23-7645 (filed May 17, 2024); *People v. McGee*, 2021 IL App (2d) 190040, ¶ 41 (disagreeing with the circuit court "that a defendant forfeits issues not raised at a *Krankel* inquiry" for a future postconviction petition); but see *People v. Wanke*, 2022 IL App (2d) 210136-U, ¶¶ 36-42 (finding argument forfeited for postconviction purposes where it could have been raised during initial *Krankel* inquiry).[1]

¶ 40    However, defendant here did not merely fail to raise his claim about counsel's failure to investigate Steinberg and Lopez during the *Krankel* inquiry. Rather, he raised a claim during the *Krankel* inquiry that is so inapposite to his current claim as to make them mutually exclusive. Defendant's current contention is that he was at the scene of the shooting but Lozano was the shooter, defendant told Steinberg and Lopez about that shooting, and counsels were ineffective for not investigating Steinberg and Lopez and presenting their testimony.

¶ 41    In contrast, during the *Krankel* inquiry, defendant asserted he was not present at the shooting because he was at Lozano's house with Lozano, and counsels were ineffective for failing to investigate that alibi defense. So, while defendant contended counsels were ineffective for failing to pursue an alibi defense premised on his absence from the scene of the shooting, he now argues that counsels were ineffective for failing to investigate a defense premised on his presence during the shooting and identification of the shooter. In other words, defendant had an opportunity

---

[1] Unpublished orders issued under Rule 23(b) after January 1, 2021, may be cited as persuasive authority. See Ill. S. Ct. R. 23(b), (e)(1) (eff. Feb. 1, 2023).

to make his current allegations before the trial court but instead made allegations which necessarily foreclose the truth of his current allegations.

¶ 42    Defendant offers no explanation for this inconsistency in his postconviction petition. He does contend on appeal that the court interrupted his statements during the *Krankel* inquiry and "displayed obvious skepticism" about his claims. However, the record does not bear this out. The court twice asked defendant whether he wanted to add any other arguments to his claims of ineffective assistance of counsel, and defendant declined the opportunity both times. Further, we are hard-pressed to understand how anything in the court's conduct or demeanor would have resulted in defendant arguing that counsel was ineffective for failing to learn that defendant was at the scene but Lozano was the shooter where he was adamant during the inquiry that he was at Lozano's house at the time of the shooting, and repeatedly rejected counsels' assertion that he told them he was present at the scene.

¶ 43    Forfeiture of the claim notwithstanding, on the merits of his petition, defendant has failed to state an arguable claim of ineffective assistance of counsel.

¶ 44    At the first stage of postconviction proceedings, an ineffective assistance claim should survive if (1) it is arguable that counsel's performance fell below an objective standard of reasonableness, and (2) it is arguable the defendant was prejudiced by the deficient performance. *People v. Bush*, 2022 IL App (1st) 210509, ¶ 31. The defendant must satisfy both prongs to adequately plead a claim of ineffective assistance. *Id.*; see also *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and the deficient performance prejudiced him).

¶ 45    In this court, defendant argues that counsel performed deficiently by failing to spend sufficient time with him to learn that he told Steinberg and Lopez the day of the shooting that Lozano was the shooter, and present that evidence at trial. However, defendant's petition and affidavit make only nonspecific, conclusory assertions to support his claim that counsels' conduct fell below an objective standard of reasonableness. Defendant makes no factual allegations whatsoever concerning the number of times that counsels spoke with him, or the length or content of those conversations. Defendant's claim that they spent insufficient time with him is therefore too broad and conclusory to state an arguable claim of ineffective assistance. See *Bush*, 2022 IL App (1st) 210509, ¶ 31; *Lewis*, 2017 IL App (1st) 150070, ¶¶ 14, 16.

¶ 46    Additionally, defendant has failed to state an arguable claim that he was prejudiced by counsels' alleged deficiency. For a defendant to establish prejudice, he must show that, but for his counsels' error, there is a reasonable probability that the outcome of his trial would have been different. *Strickland*, 466 U.S. at 694. However, allegations of prejudice based on speculation are insufficient even when a petition is at the first stage of proceedings under the Act. See *People v. Johnson*, 2021 IL 126291, ¶¶ 57-58 (approving *People v. Scott*, 2011 IL App (1st) 100122, ¶ 31, in which we affirmed a summary dismissal where the claim of ineffective assistance of counsel was "based on mere conjecture or speculation" (internal quotation marks omitted)).

¶ 47    Defendant's claim that the outcome of his trial would have been different had trial counsels investigated and interviewed Steinberg and Lopez is too conclusory and speculative to advance to the second stage. First, defendant acknowledges that Steinberg and Lopez's testimony could not be admitted as substantive evidence. See *People v. Doehring*, 2021 IL App (1st) 190420, ¶¶ 100-03 (discussing admissibility of prior consistent statements (citing Ill. R. Evid. 613(c) (eff. Sept.

17, 2019))). Rather, it could only be admitted to combat an allegation by the State that defendant's testimony that Lozano was the shooter was a recent fabrication. See *id.* Defendant, however, did not testify at trial. Steinberg and Lopez's testimonies would therefore have been inadmissible at defendant's trial and could not have affected the outcome.

¶ 48 Defendant nevertheless contends on appeal that he would have testified "had his trial counsel reasonably investigated and been prepared to present the testimony of Mr. Steinberg and Ms. Lopez." He argues that the circuit court "should have assumed" that, had trial counsels done so, (1) he would have testified, (2) he would have testified that he was at the scene and Lozano was the shooter and, presumably, not to the alibi defense he previously claimed counsel failed to investigate, (3) the State would have claimed that his testimony was recently fabricated, and (4) Steinberg and Lopez's testimonies would be admitted to rebut the charge of recent fabrication. In that scenario, defendant asserts the jury may not have credited Montano's identification of him as the shooter.

¶ 49 In making this argument, defendant offers no authority requiring the circuit court, or us, to make these assumptions. He notes merely that, when considering prejudice, we must consider whether, "but for" an attorney's unprofessional error, there is a reasonable probability that the outcome may have differed. See *Strickland*, 466 U.S. at 694. However, an attorney's performance regarding a defendant's waiver of his right to testify is not ineffective unless there is evidence that the attorney "refused to allow the defendant to testify." *People v. Youngblood*, 389 Ill. App. 3d 209, 217 (2009).

¶ 50 Here, defendant does not explain why he would have testified "but for" counsels' alleged failure to learn about and interview Steinberg and Lopez, or how that failure equated to refusing

to allow him to testify. In his unsworn affidavit, he did not proffer any reason for why he did not testify, or discuss that decision at all. In his petition, he merely claimed that, had counsels performed a reasonable investigation, they could have presented evidence showing Lozano was the shooter, "including [defendant's] testimony."

¶ 51    Further, at trial, before the defense witnesses testified, defendant confirmed he understood that whether to testify was a decision he should discuss with counsels but was ultimately his choice alone. He told the circuit court he did not wish to testify, and that he was making that decision of his own free will. Although he initially answered affirmatively when asked if anyone promised him something not to testify, he immediately thereafter confirmed he was deciding not to testify of his own free will. After the defense witnesses testified, he confirmed that it was still his decision not to testify.

¶ 52    Given his responses to the court's admonishments, the record rebuts any assumption that counsel's performance prevented defendant from testifying if he wished, despite the absence of Steinberg and Lopez's corroborating evidence. See *Knapp*, 2020 IL 124992, ¶¶ 33-34, 53-54 (defendant's claim that he did not know he could testify due to erroneous advice from counsel that he could not testify without evidence to corroborate his testimony was rebutted by the record showing he confirmed at trial that his decision not to testify was his alone). Rather, he twice informed the court he did not wish to testify. See *id.* ¶¶ 46, 51 (stating that to preserve the right to testify, a defendant must contemporaneously assert the right, and noting that the defendant never indicated he wanted to testify).

¶ 53    As defendant makes no specific factual allegations explaining how counsels prevented him from testifying, any argument that he would have testified and the outcome of his trial would have

been different "but for" counsels' deficient performance is conclusory and speculative. Defendant therefore has not shown he was arguably prejudiced by counsels' alleged failure to spend sufficient time with him to learn what he told Steinberg and Lopez and present that evidence at trial.

¶ 54    For the foregoing reasons, the circuit court did not err in summarily dismissing defendant's postconviction petition. We therefore affirm the judgment of the circuit court of Cook County.

¶ 55    Affirmed.